UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEBRA DECATO | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-05-0449 |
| | § | |
| NORTHEAST MEDICAL CENTER HOSPITAL, | § | |
| *Defendant*. | § | |

## OPINION ON SUMMARY JUDGMENT

Defendant Northeast Medical Center Hospital has moved for summary judgment on plaintiff's claims (Dkt. 9).[1] Plaintiff DeCato has expressly abandoned her claims concerning tortious interference with prospective business relationships and interference with rights protected by the Employee Retirement Income Security Act, leaving only her claim under the Family Medical Leave Act (FMLA) 29 U.S.C. § 2615(a)(2).[2] The motion for summary judgment is well-founded and will be granted.

### BACKGROUND

The claim arises from the termination of Debra DeCato from her job at Northeast Medical Center Hospital. DeCato began working at Northeast in 1997 as a licensed certified surgical assistant.[3] In 2004, DeCato was diagnosed as having a benign tumor in her hand,

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including final judgment (Dkt. 15).

[2] Dkt. 18, at 7.

[3] For purposes of this motion, the court accepts the undisputed facts stated in plaintiff's affidavit, Ex. 1 to plaintiff's response.

requiring surgery. DeCato requested FMLA leave from work in late 2004, which Northeast granted.

DeCato underwent surgery on December 22, 2004 and was scheduled to return to work on January 4, 2005. Her mother flew in to help care for her and was scheduled to leave town on January 3, 2005. However, DeCato's mother missed her flight and rescheduled her departure for the afternoon of January 4, 2005.

On January 3, 2005, DeCato called Pamela Flowers, her supervisor, and asked to be excused from work the next day in order to take her mother to the airport. Flowers called back a few hours later and left DeCato a voicemail message denying her request and directing her to report to work as scheduled the next day. After failing to arrange alternative means of airport transportation for her mother, DeCato called Northeast's automated operating room hotline on January 4 before her scheduled shift and left a message that she would not be attending work as scheduled that day.

DeCato returned to work on January 5, 2005, apologized to Flowers for missing work the previous day, and resumed to her normal duties, working a full shift plus overtime. On January 7, 2005, DeCato was summoned to the office of Karen Pugh, the director of surgical services, and was informed that she was being terminated for insubordination as a result of her absence on January 4, 2005. DeCato appealed her termination to Northeast's Human Resources Department, but was granted no relief. Based on these facts, Plaintiff claims she was terminated in violation of the FMLA.

## ANALYSIS

Under Federal Rules of Civil Procedure, a motion for summary judgment shall be rendered when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when a "reasonable jury could return a verdict for the nonmoving party." *Id*.

The FMLA imposes both prescriptive and proscriptive obligations upon covered employers. *Chaffin v. John H. Carter Co.,* 179 F.3d 316, 319 (5th Cir. 1999). The law entitles eligible employees to 12 workweeks of unpaid leave annually for certain covered reasons, including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(D). In addition to these prescriptive or substantive entitlements, the FMLA prohibits employers from retaliating against employees for exercising their FMLA rights. 29 U.S.C. § 2615. Prohibited acts include:

> (a) Interference with rights
>     (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter [29 U.S.C. § 2611, *et seq*.].
>     (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against

>any individual for opposing any practice made unlawful by this subchapter [29 U.S.C. § 2611, *et seq*.].

29 U.S.C. § 2615(a).

It is undisputed that DeCato was granted all the FMLA leave to which she was entitled by Northeast, and that her FMLA leave ended after January 3, 2005. So DeCato's claim is not based upon the denial of any substantive entitlement under the FMLA. Instead, she claims that Northeast terminated her in retaliation for exercising her FMLA rights, thereby violating § 2615.

There are three essential elements to a claim of retaliatory discharge under the FMLA: (1) protected activity by the plaintiff; (2) discharge by the employer; and (3) causal connection between the protected activity and the discharge. *Chaffin*, 179 F.3d at 319. In this circuit, the framework for analyzing FMLA retaliation claims is borrowed from case law enforcing similar provisions under Title VII and the ADEA. *See id.* at 319-20 (adopting the "familiar" *McDonnell Douglas* three step burden shifting scheme); *see also Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 333 (5th Cir. 2005) (applying "mixed motive" analysis based on *Desert Palace, Inc. v. Costa*[4]). In this case, it is immaterial which particular framework is used to analyze DeCato's claim, because she has presented no evidence from which a reasonable jury could find a causal nexus between her exercise of FMLA rights and her discharge by Northeast.

---

[4] 539 U.S. 90 (2003).

DeCato relies on three pieces of evidence to justify an inference of retaliatory motive here: (1) lack of prior disciplinary record; (2) failure to follow standard employment policies and procedures; and (3) close temporal relationship between FMLA leave and discharge. Courts in this circuit have sometimes considered such evidence as "indicia of causation" in Title VII retaliation cases. *See Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994) (dicta *citing Jenkins v. Orkin Exterminating Co.*, 646 F. Supp. 1274, 1278 (E.D. Tex. 1986)). But the undisputed summary judgment record effectively neutralizes any suspicion of causal nexus here.

It is true that DeCato had no prior disciplinary history, but it is also immaterial. Unlike the employer in *Jenkins, supra,* Northeast does not seek to justify her discharge by citing earlier performance deficiencies or misconduct that had gone unnoticed until her protected activity. The stated reason for DeCato's discharge was insubordination by refusing a direct instruction to report to work.[5] No similar instance of insubordination had occurred prior to DeCato's FMLA leave, and so there is no warrant to believe that Northeast had become hyper-vigilant against this form of misconduct only after she took FMLA leave. Employees who exercise statutory rights are not thereby immunized from the consequences of their own misconduct. *See Whatley v. Metropolitan Rapid Transit Authority,* 632 F.2d 1325, 1329 (5th Cir. 1980).

---

[5] D. Ex. A, attachment 1 (Dkt. 9).

DeCato's argument that Northeast violated its own disciplinary policies and procedures rests on a mis-characterization of the stated reason for her discharge. DeCato's brief (p. 16) portrays this as a case of mere "failure to report to . . . work," and then takes Northeast to task for not following the progressive discipline normally prescribed for such an infraction.[6] But the official termination document explains the offense as follows:

> Insubordination on 1/4/05. Failed to report to work as scheduled after a request for time off was denied.

P. Ex. 4. DeCato's own affidavit concedes that she was informed by the Director of Surgical Services that "I was being terminated for insubordination as a result of my January 4, 2005 absence from work following [the hospital's] denial of my request for leave." P. Ex. 1, at 2, ¶ 8. Thus DeCato understood that her failure to report to work was more than a mere breach of attendance policy. By taking time off that she had been explicitly denied permission to take, DeCato was defying the legitimate authority of her employer to set work schedules for its employees. In a word, DeCato was insubordinate, not merely absent.

Under Northeast's established personnel policies, insubordination is categorized as a Level IV offense for which immediate discharge is warranted.[7] DeCato's insubordination would properly be regarded as a serious offense in any work setting, but especially so in a hospital seeking to ensure appropriate staff coverage for patient surgery. Northeast was well

---

[6]   P. Ex. 3 (Dkt. 18).

[7]   P. Ex. 3 at 4.

within its prerogative, under its standard policies and procedures, to treat DeCato's insubordination as a first-time dischargeable offense.

Finally, DeCato points to the timing of her discharge, which occurred only four days after she completed her FMLA leave. But this ignores the fact that the time interval between her admitted misconduct (occurring the day *after* her leave) and the discharge was even shorter. Under these circumstances, the temporal proximity to the protected activity proves nothing.

Nothing in this record casts doubt on Northeast's consistently stated reason for DeCato's discharge. DeCato unquestionably committed the workplace violation of which she stands accused – failure to report to work after her request for additional non-FMLA leave was denied. The penalty imposed for this infraction was consistent with the employer's stated policies and procedures. DeCato offers no evidence that other employees similarly situated to DeCato were treated differently (i.e. not terminated) for similar acts of insubordination. Nor is there any suggestion of employer hostility to the FMLA in general, or to accommodation of FMLA leave requests in particular, whether by DeCato or by any other employee. *Cf. Richardson*, 434 F.3d at 335 (employer remarks soon after plaintiff's FMLA leave that he was "tired of all of this stuff" and had "accommodated her enough" held sufficient to create fact issue on retaliatory motive).

7

## CONCLUSION

No reasonable jury could render a judgment for DeCato based on the evidence contained in the summary judgment record. Therefore, defendant's motion for summary judgment is granted.

The court will issue a separate final judgment.

Signed at Houston, Texas on August 15, 2006.

_____
Stephen Wm Smith
United States Magistrate Judge